The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons are in the manner of formal business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw their eyes and give their attention to the Court of Justice, the United States and the Federal Court. Thank you. You can be seated. Mr. Pickett, whenever you're ready. Good morning. May it please the Court. My name is Mark Pickett, and along with Sheila Tenney, I represent Mr. Fowler in this matter. And I would like to begin with the Martinez issue this morning. Martinez v. Ryan provides that state collateral review counsel's ineffectiveness in failing to present a trial IAC claim may establish cause to excuse the procedural default of that claim. The Court's rationale for this decision is that the initial review collateral review proceeding undertaken with ineffective counsel may not have been sufficient to ensure that proper consideration was given to that claim. In effect, without the benefit of Martinez, a petitioner, including Mr. Fowler, would get only one chance to present his trial ineffectiveness claims in state court. For this reason, Mr. Fowler's case should be remanded to the district court so that he can have the opportunity to present trial ineffectiveness claims under Martinez. Could I just clarify one thing? Martinez or Trevino? Yes. And the reason that I ask is that I believe in your opening brief, you seem to suggest that all trial IAC claims in North Carolina had to be raised in post-conviction proceedings. But that doesn't seem to be the case, and you seem to have clarified that a little. Yes, Your Honor. I think Trevino makes clear what the intent of Martinez is, which is Martinez is not setting this right-line rule where if any imaginable trial IAC claim could be presented on direct appeal, then Martinez does not apply to that case. What Trevino says is that if it's highly unlikely in a typical case, that you'll have a meaningful opportunity to present your trial IAC claim on direct appeal, then Martinez and Trevino apply to your state. The only purpose for my question was to make sure that factually you're not contending that North Carolina is a Martinez state, it's actually a Trevino state, which I thought was where you were ending up in your response.  Thank you. Sorry for the interruption. No problem. And just getting back to that point, the rule from Trevino is that if it's highly unlikely in a typical case, that counsel will have a meaningful opportunity to develop a trial IAC claim on direct appeal, then Martinez and Trevino apply to that state. And the North Carolina case that is really the main case that addresses this issue, State v. Fair, says very similar language, that if it's likely that counsel will not be in a position to adequately develop many IAC claims on direct appeal. How, if at all, is that different from the rule in the Fourth Circuit for IAC claims? In terms of direct appeals in the Fourth Circuit, I'm not precisely familiar with the rule in the Fourth Circuit, but I know that the way the Fourth Circuit has interpreted the North Carolina rule in McCarver v. Lee is also on point with that. The overwhelming majority of trial IAC claims, with the exception of this very narrow category of cold record claims that the state in its own response refers to as a limited category of claims, only those type of claims can be brought on direct appeal. So, assuming, arguendo, that the Fourth Circuit rule, and virtually every other circuit rule to my knowledge, is pretty much exactly the same as North Carolina's rule, does that mean that the dissenters in Trevino were correct that what Justice Breyer was doing was simply overruling Coleman in effect by saying that, in effect, no lawyer who represents a defendant in a first post-conviction, state post-conviction, can represent that defendant in a 2254? Is that where we end up? I guess to that second question, I think that may be the case. Or that, alternatively, some third counsel would need to be appointed to look into any Martinez claims. That could be pretty messy, couldn't it? Don't you think most courts would just say, okay, enough of this, you just can't do both? I think that may be the case, yes. And, essentially, that's what you're asking for here, right? That is what we're asking to do here, and I think as we've looked more closely at this particular case, at first we thought that there was no conflict in this case for our purposes. But as we've looked at it more closely, and this is a new issue, I think we've seen that it's much more likely that a conflict does exist in this case, and that the district court would, in all likelihood, need to appoint a new counsel to look at any Martinez issues in this case. Tell me that again, why you think new counsel needs to be appointed. Well, I think there's two potential reasons for that, two likely reasons for that. The first is that one of Mr. Fowler's state post-conviction attorneys, Faith Bushnack, represented Mr. Fowler until June of last year when I was appointed to the case. Until that time, and during that time, starting from 2011, Miss Kenny, my co-counsel, was also counsel on that case. But hadn't the MAR been filed by Greenwald and Teachout? Hadn't they been the ones that had researched the record and had determined what claims were going to be filed, if any, with regard to ineffective assistance to counsel? I think certainly Teachout and Greenwald, but also Bushnack. Bushnack wasn't appointed until two years after, or 18 months after the MAR had been filed. That's true, Your Honor, but that was still part of the initial collateral review post-conviction proceedings that extended Miss Pendry and Miss Bushnack represented Mr. Fowler for the filing of the amended MAR and during the evidentiary hearing. And as we know from Martinez and Trevino, that evidentiary hearing is very important for the development of trial IAC claims. But don't the facts here indicate how rapidly you run into the logical limits of the argument? Because by my count, Mr. Fowler was represented by Mr. Glover on appeal, and then Mr. Greenwald, Miss Teachout, and then they withdraw, and then Miss Pendry is appointed to replace, and then Miss Bushnack. Mr. Fowler has been represented by a succession of independent counsel, all of whom had the opportunity to look at and pursue an investigation of post-conviction IAC. Is that not a fair assessment? I think everything is correct except their ability to look at post-conviction IAC because they were still in that initial post-conviction review proceeding, and that was their only opportunity to present those IAC claims was part of that initial post-conviction review proceeding, which included that initial MAR and then whatever Miss Bushnack and Miss Pendry did, and then the evidentiary hearing. There was no ruling on any of the issues in the case until after Miss Bushnack and Miss Pendry were on the case, and it would have been very difficult if not impossible to present a post-conviction IAC claim for claims that hadn't even been decided. The purpose of appointing independent counsel is so that fresh eyes look at the record other than the eyes of the attorney whose activities and actions are being examined, and it seems to me that that's happened at every stage. When the MAR was filed, you had a different set of attorneys analyzing the record and determining what claims are going to be made, and then attorneys are changed so that when the federal habeas action is filed, you've got new attorneys then taking a look at it and making determinations. It just seems to me that the purpose of having independent counsel has been fulfilled in this case. Well, I think the purpose of federal habeas, some of the attorneys were the same, and again, those attorneys... Not the same as the one who filed the initial motion for appropriate relief. That's true, the initial motion for appropriate relief, but again, I think that to say that there were simply new attorneys coming in to take over during the same proceeding is very different than from what Martinez talks about, which is after you're through one stage of the initial post-conviction review proceeding, you don't have the opportunity to come back in another proceeding to present that claim. That's the key difference that Martinez... The difference between a direct appeal claim and a claim presented in post-conviction, and the fact that he had additional attorneys appointed later during the same post-conviction proceeding doesn't resolve that issue. So in your view, counsel has to be appointed afresh after the completion of any state MAR process? I think that the direction where Martinez is going... My question was to you. Is that what you think should have happened to you? Well, at the time there was... With the hindsight of Martinez, yes, that is what should have happened, but of course at the time this newly created Martinez rule was not in effect, so it was not known, but it should have been at the time that that case had been known. Since the trial was concluded, how many different lawyers has this defendant had? Your Honor, I would say it's been seven perhaps? Seven lawyers since the trial examining the record for... That's where you're in a minute. But I think what Martinez gets to is not the number of attorneys or really how many attorneys to look at the claim, it's the type of proceeding. It's whether you have the chance in that proceeding. There's not any distinction talked about with new attorneys getting on the case, certainly not in the same state post-conviction proceeding. The fact remains is that for any of his non-cold record claims, Mr. Fowler's one chance to present his trial and effectiveness claims was in that initial post-conviction review proceeding. Now, I know that our Gray order and the Juniper order suggest, if they don't say explicitly, and they probably do, that we don't require 2254 counsel actually to identify some mistake that they themselves might have made, but it would be awfully helpful here under the circumstances because you just responded to Chief Judge Stratzer and we've had a revolving door of attorneys in this case. Can you proffer what you think is the most colorable potential claim here? Sure, Your Honor, and I would just preface this by saying that, of course, I think there may be other claims besides Swanson that may need further investigation, but certainly it relates directly to the claim, the eyewitness identification claim, for which we're here on the certificate of appealability. There's this eyewitness identification in this case that the district court itself in its order describes as a questionable eyewitness identification. There were some issues that came out within the trial that called it into question, but what did not come out until state post-conviction proceedings, it's referenced in the brief, is that after Guzman, the eyewitness, identified or made a sort of uncertain identification of Mr. Fowler in the second photographic array presented to him by police, the police then told him that Mr. Fowler had boasted about committing the crime and then had used the money he got from committing the crime to go buy drugs. You say that didn't come out until when? That did not come out until the state post-conviction proceedings. That fact was discovered, but it was never presented as a trial IAC claim. It seems highly likely to me that it was ineffective for trial counsel not to investigate Guzman, to send a private investigator or someone to go speak to him. This came out in state post-conviction. Do we know that counsel did not do that? There's nothing on the record that I've seen to indicate that counsel did that. And then when it came out in state post-conviction... Okay, so you're not saying that counsel failed to do that. You're saying there's no showing in the record whether counsel did or did not. I don't believe counsel did it. I think I would need further investigation to confirm that 100%, but I don't believe counsel sent an investigator or spoke to Guzman beforehand or clearly did not take the steps needed to discover this fact because I think it clearly would have come out in the pretrial hearing. And when the Motion for Approval and the Post-Conviction Counsel discovered this fact, they didn't do anything with it. They hired an eyewitness identification expert who had spoken to Guzman, and that's how this fact came out, and then Guzman later testified to it at the hearing, but they never presented it as a trial IAC claim for the failure to investigate that fact. And at least based on just my review of the record, that appears to be a substantial claim of trial in effect. Mr. Biggin, to accept your argument and right to new counsel, do we have to presume that when these new counsel are appointed midway through the proceedings that they did nothing on their own, made no independent examination of the record as newly appointed counsel to determine if there were other claims that had not yet been asserted, and to be specific, so you understand, be more specific with my question. For example, the MAR was filed in 2002, and two years later, roughly, Ms. Henry and Ms. Bushnag are appointed before a decision is issued. Do we have to presume in order to accept your argument that they did no independent examination of the record to determine if there were other IAC claims that could have been made that weren't? No, Your Honor, I don't think we need to presume that. I can't say for sure exactly what they did, but again, what Martinez is getting at is the fact that you have that one chance by meeting the proceeding to present those claims. So counsel could have looked into it further, but certainly to determine whether, part of what you need to determine whether post-commissioned counsel were ineffective is some sort of outcome, and by that point, the case was still pending. It still represented only one chance to present that claim. So in your view, Martinez is proceeding specific. There not only has to be independent counsel, there has to be pre-conviction counsel, post-conviction state MAR counsel, and then federal counsel? Certainly in this case, Your Honor, yes. And the specific uniqueness of this case would be what exactly? Well, I merely said that I can't speak to other cases, but I think that would be the likely outcome in another case where under Martinez, to have the same counsel that represented, in federal habeas to represent a counsel that represented the person in state post-conviction would be problematic, and I think that's where Juniper and Gray, the two previous decisions by this Court, were already heading in that direction anyway. Let me switch gears a little bit. Sure. My next question. Your Honor, I have about two and a half minutes left, and then I would like to address my COA issue as well. Okay. I'll give you the time to do that, with the concern of my colleagues. One of the things that concerns me is that this issue is being presented to us in the first instance, that it was not presented to the District Court. Counsel in Gray, counsel in Fowler, knew to raise this issue, and it was raised and adjudicated. Here, we're having it presented to us for the first time on appeal. That causes me a problem whenever I see an issue coming up that the District Judge has not ruled on. So what explanation or way around that problem would you say? Well, I think this does present kind of a, simply inevitably because of the timing of when Trevino came out, that this would come up on appeal. It was not clear that Martinez applied to North Carolina until the Trevino case was decided, and that decision was made on May 28, 2013. We were already in the Fourth Circuit by the time that decision came down. So it became, and on top of that, the issue with Miss Penny's co-counsel having a potential conflict, until Trevino came down and I was appointed on the case, it was not really possible. But on the Fresh Eyes issue, on that issue, why is this coming to us now for the first time on appeal? As opposed to, I'm sorry. Why was the issue raised in the District Court, that he's entitled to new counsel because he's entitled to have independent counsel to review the record in the state first and next release? Well, I think that gets to the Trevino issue. It may not have been because the claim was not discovered or was maybe not known, but the fact that Trevino was not decided, this claim did not exist in North Carolina until that time. And additionally, that conflict issue did create a problem with identifying issues. I think Gray, in the first case, who addressed Martina's issues in the Fourth Circuit, said that there's even a problem to have counsel, conflicted counsel, identify an issue. You wanted some time. Sure, and my time is, I think I have 10. I may already be over, but I'll go ahead. Go ahead. Well, just to talk briefly about the certificate of appealability issue, this is a case where Mr. Guzman, after he saw, got a five-second glimpse of a person that shortly after he heard gunshots in the Howard Johnson's lobby, then as he was presented with a series of photographic arrays by police, made five tentative identifications of the person that he saw. He wasn't even able to identify Mr. Fowler in the first photographic array. It was only in the second photographic array that he made that tentative identification. And then, well, what we also know from the additional facts that came out in the motion for appropriate relief was that police then told him that Fowler had boasted about committing the crime. So his identity was already confirmed once as the correct suspect in the eyes of police. And then the police did nothing, state did nothing for almost 18 months until they called Mr. Guzman in for a meeting shortly before a pretrial hearing and told him that Fowler was a suspect in the case and where he would be sitting in the courtroom. And it was only after that that Guzman was able to make this very certain identification, despite being very uncertain when presented with these photographic arrays. Could you help me, backing up, I mean preliminarily, how is this issue before us? Well, this issue was raised in the district court in the federal habeas petition, and this was the issue on which the Certificate of Affiliability... But didn't the North Carolina Supreme Court consider and specifically address this issue under the harmless error standard? And didn't it say, first of all, that there was no error, and if there were, the error was harmless? That is correct, Your Honor. And first, I guess to address harmlessness, there are five key facts that I'd like to point to with respect to that. But I'm not speaking to the merits. I'm speaking to a key, what seems to be the linchpin of your due process claim. Well, that's correct, Your Honor. They did, and I understand that, and I think that determination was unreasonable by the state Supreme Court, because they did unreasonably apply the facts, and not really consider the relevant facts. But was that challenged, the determination, the harmless error determination that you are now saying was unreasonable? And in fact, I don't think you, as I recall, raised harmless error in your opening brief. Well, I think the Supreme Court has indicated that harmless error is an affirmative defense for the state to raise. So it was not discussed. But you're challenging, your fellow would be challenging the North Carolina Supreme Court's determination. That's correct, Your Honor. And as to the Chapman harmless error, I think we do discuss some of the facts that are relevant to that in the factual discussion related to what the district court calls for self-interested felons in this case, that really constitute the only other evidence in this case. And that evidence was very questionable. We know that even with this eyewitness identification, this was a very difficult case for the jury. They deliberated on the question of guilt for a full day, and we know that the eyewitness identification was a part of their deliberation, because they requested that these two photographic arrays that included Fowler's photograph be sent back with them, and they were sent back into the deliberation room. And we also know that this was a difficult case viewed as a closed case by the state. They offered Mr. Fowler a capital murder case, a plea deal that would have allowed him to be released in 14 and a half years, and they did rely heavily on the eyewitness identification in their closing argument. Just very briefly, if I may, you probably have already answered this, but if we disagree with you on the COA issue, could we nonetheless remand for the district court to consider your Trevino issue in the first instance? Yes, absolutely. Okay, so maybe you didn't answer it previously, because I thought in response to my question about whether there was a culpable issue, you were tying the potential Trevino analysis to the merits of your due process claim. I think they're certainly separate claims. Factually, they incorporate some of the same facts. But one is an IAC claim, and the other is a straight-up due process. That's right, John. I think we understand your position. Let's hear from Ms. Callaway-Durham. May it please the Court, I guess I'll start with the Trevino issue. I'm really not sure if it's a Trevino issue or a Juniper issue.   from the statute of limitations. The defense was coined as a Juniper issue. And I see Juniper and Gray, Martinez, and then Trevino as having separate and distinct issues for this Court to consider. First and foremost, Martinez is not about the issue of independent counsel, per se. Martinez is about whether or not there's cause to excuse the default, the procedural default, for failing to raise something that Coleman versus Thompson explicitly said you could not do. In other words, Martinez is about whether or not there's a narrow exception to Coleman versus Thompson. Martinez is very clear it did not overturn Coleman versus Thompson. It just gave a narrow exception. And the narrow exception is not to the constitutionality of counsel on post-conviction. The narrow exception is, A, if you're in a state that did not allow you to raise ineffective assistance of trial counsel during direct appeal, such that your initial review process is in state collateral review, and during that collateral review you either didn't have an attorney at all because you're not constitutionally allowed to have one under Coleman, or you had one who failed to raise something, deficient in failing to raise something. They don't say you're constitutionally ineffective for raising it. They just say deficient for raising. Deficient in raising the ineffective assistance at trial counsel. All roads lead back to trial counsel. It's not the constitutionality of the post-conviction counsel. It is the defectiveness in failing to raise a constitutional issue, that being trial counsel ineffective assistance. And if you have those things, then you get to, you must then raise a substantial claim, which is to say you have some merit. And Martinez has language about what that merit is. In other words, they don't want to put a significant strain on state resources. And from what I'm hearing in the questions earlier, I think with the arguably seven sets of eyeballs we've had here before we got to this point, that it would be, in fact, a substantial strain on state resources. I don't quite understand that, because once the MAR is finished, what state resources are being expended on behalf of the defendant? Once the defendant comes into federal court, the state's off the hook. The state's standing here. Oh, yeah. The assistant attorneys general around the country will have work to do. But that's a good thing for the assistant attorneys generals around the country. And the defense are more often than not, they're paid by the state as well. I don't think that's true. You contend that defense counsel and federal habeas 2254s are paid by the state. That's not true. They're paid by the federal taxpayer. My reasoning, and if I could get back to Jennifer, was simply to go down the road of how we got to Jennifer and Martinez, being why there was an obligation to bring a substantial claim, if I can get back to that. With regard to Martinez, the issue is cause. Whether or not there's cause, under this narrow exception, to excuse the fault under Coleman. Then you get to Truvino. Truvino is not about whether or not there's, in effect, Martinez error. Truvino, excuse me, is about whether or not one of the prongs of Martinez applies in states where on the record they say that you're not allowed to bring, excuse me, that you are allowed to bring ineffective assistance of counsel on direct appeal, but then they make it virtually impossible for you to do so. That's the issue, that's the holding of Truvino in applying those sets of facts to Martinez. Then we fast forward to Gray and Juniper. The issue in Gray and Juniper was not about Martinez error insofar as whether or not there is a substantial claim. They never got there for a reason. This court, excuse me, never got there for a reason. Martinez, excuse me, Juniper and Gray are about whether or not they should appoint independent, qualified counsel for the limited purpose of going back to look to whether or not there was ineffective assistance of trial counsel that was not properly addressed by counsel during the first prong hearing, excuse me, initial review in Virginia, which is in fact the State Collateral Review process. Could I just parse this so that I'm sure I understand what you're saying? The focus in Truvino, which does appear to me to expand the narrow exception in Martinez. Would you agree with that? I don't believe it expands it. I think it just gives another explanation of what one of the prongs of Martinez is. Because expanding it so that Coleman is overturned would mean that you are looking to ineffective assistance of counsel on collateral review. You're not. You're looking at the failure to raise something, not on a constitutional level, but on a factual level, that was not raised during trial counsel representation that was ineffective constitutionally. To the extent that I understand what you're saying, I'm actually not sure it's either A, accurate, or B, that it helps the State. In Martinez, you had, as I recall, State procedural requirements that failure to bring a claim would bar it. The claim had to be made as a rule matter at trial, whereas that Martinez reached out a little far. Travino covers a state like North Carolina where it's difficult, where you have this bifurcation. You can bring IAC claims if they're required to be brought, at the first instance, if they are apparent from the face of the record. If they require investigation, then Travino says you're entitled to independent counsel. But I guess most of all I'm not quite sure why for purposes of your argument it matters. Okay. Travino is about whether or not it's virtually impossible to bring ineffective assistance of trial counsel on direct appeal. Right. And you would acknowledge, though, that North Carolina, that at least, and it appears to be Fowler's counsel's position, that North Carolina is a state similar to Texas in that it is difficult, because you have this bifurcated process, to bring claims, IAC claims, that do not appear on the face of the trial record. Like, for instance, failure to explore an alibi defense. You wouldn't necessarily, you would need to do additional post-trial investigation for that. But that Travino covers that. Travino is not applicable to North Carolina insofar as the reasons that they gave for applying it to Texas are not, are distinctive from North Carolina. For instance, they gave examples of the time constraints to file this motion for a new trial. There was an eight-day window before counsel was appointed after sentences, but sentencing followed by 22 days to decide to file the motion and to raise the claims in the motion, where they had maybe 45 days for an extension, but they still wouldn't have the transcript. In North Carolina, you don't have that circumstance. But you do have a statute that requires, as I recall, I think it's 15A.14.19.A.3, that as in Texas, on direct appeal, defendants in North Carolina are confined, if a defendant was in a position to raise a ground on direct appeal, because it appears on the face of the record, they have to do so. If it appears on the face of the record. Right, and that's really all I'm saying. But what we're talking about is what does not appear on the face of the record, which I believe you used an example with alibi. Right. And what I was going to say is in North Carolina, we have another statute that allows the bringing of a motion for appropriate release only in the appellate court. It's the court with the jurisdiction to handle it, and that's under 15A.14.18. 15A.14.18 allows these motions for appropriate release to be brought in. This is what you raised in your 28J letter? Yes, and there was a response. And the response says, like in Texas, there's stuff in the books but don't mean anything in the real world. How many instances, I mean, obviously you didn't get a chance to file a response to counsel's response to your 28J letter, but how many instances can you point to where this procedure has been used in the last, let's say, 30 years? Well, I didn't go back 30 years, and I don't claim to have an exhausted list, and I can't provide additional authority to the court, but I found 56 cases, some of them death cases, many of them raising ineffective assistance of trial counsel, many of them raising other issues. But the point is, Were the North Carolina Supreme Court permitted and permitted discovery? Yes. So far? Well, no, we're not talking about discovery. We're talking about where they permitted the ineffective, excuse me, the 1418 motion to be heard during the pendency of the direct appeal process. Well, what's the point of that if you need discovery? Well, curiously, one of the cases they brought up was State v. Atkins. If you read State v. Atkins, their premise is that State v. Atkins says that you cannot, that discovery is not allowed. In effect, what State v. Atkins said, because discovery was done in State v. Atkins, the issue with State v. Atkins was not whether or not the court had the discretion to allow discovery. They, in fact, did allow it. The issue was whether or not the discovery they were specifically seeking was going to be admitted. And there was an in-camera review, which happens all the time in post-conviction. That is no different than under post-conviction. And during the in-camera review, the judge said, I've looked at this, and I've determined it wouldn't be helpful to you, which is why I didn't allow it in. State v. Atkins does not stand for the premise that you are not allowed to raise discovery during this direct appeal process. What it says is that it's basically at the court's discretion. So it's not disallowed, and it has been done, and it wasn't enacted. I'm sorry. The court doesn't have discretion to deny discovery in a MAR, does it? The court has discretion in a motion for appropriate release in post-conviction. Is that what you're asking me? Yes. Yes, the state is required to do certain forms of discovery. Precisely. But... So there's no equivalency. The equivalency is what Atkins stood for, which was whether or not some things went into an in-camera review, and the judge, after viewing it in camera, could decide then not to allow it. And the reason they didn't allow it was because it wouldn't be helpful. Well, I guess I'm having difficulty finding an equivalency between a procedure on the one hand, where a post-conviction counsel has the full panoply of discovery, fewer time constraints, et cetera, on the one hand, and then you can file this thing with the Supreme Court of North Carolina, and there's all kinds of discretion for judges to say no. Why would counsel ever take the second route rather than the first? Discovery was the one thing that Trevino looked at. Again, they looked at the time constraints. If you add up the timeline, and this is just a part of the timeline, which routinely gets extended in direct appeal processes in North Carolina, specifically with respect to capital cases, from the time of the entry of judgment all the way to when the appellee, the state, files their brief, I think I counted it, 353 days. That's if there are no extensions. I'm sorry. What if we disagree with you on your Trevino analysis about the structure of the North Carolina MAR process? Do you lose? I'm not sure. I'm really having trouble following your argument about the North Carolina statute and why, for all practical purposes, North Carolina's statute differs from Texas. It differs from Texas. I don't want to go back there because I was listening, and I'm sorry, I'm still not getting it. Is it critical to your argument is what I'm asking now. It's one of many factors that's critical to my argument because Trevino raised several factors, and in pinpointing each one of those factors that Trevino relied on, our position is that North Carolina is not like Texas, time constricting, but one of them. The statutory framework under 1418. I'm sorry. I think Duncan has the same question I do. Assuming you lose on your threshold issue of whether North Carolina is a Trevino state, what is your next argument for why you should win nonetheless? If this court does believe that North Carolina falls within the threshold of Trevino and therefore Martinez applies, our response is there is an 11th hour motion that's not been fully briefed, but that the issue that this motion was premised upon is Juniper, and Juniper being whether or not there is a conflict of interest. Everything that has been filed since my response to their motion is saying there is no conflict. So now you're going to the fact, as the questions to Mr. Pickett focused on, the availability of these multiple sets of eyes, looking at what happened during the trial process, not the effectiveness of post-conviction counsel per se, but the potential ineffectiveness of trial counsel. And I thought that was where you were going initially. Yes. The premise, and I kind of sidetracked because I felt like I had to explain the procedure of how we got here. Well, you defended your first line of attack. I understood that. But moving on. Yes. Moving on, the purpose of this motion, which I believe is what's before this court, is whether or not he's entitled to Martinez' counsel under the ruling of Juniper versus Davis. And our position is that that holding was specific to a conflict of interest issue, which we do not believe exists, which in his last filing he admits did not exist. His words were, as noted in the motion, filed if not represented by undersigned counsel Sheely McKinney or Mark Pinnock during a state post-conviction proceeding. Thus, no direct appeal, no direct conflict exists. Preventing undersigned investigating claims of post-conviction counsel were ineffective. Let me just say, right now there does not exist pending before us a claim of ineffective assistance of counsel that is procedurally barred by the state or procedurally barred by our rules that Martinez would allow cause to be established in order for us to reach. He has not raised a substantial claim. Is that what you're... Well, as I understand it, there's not a claim now. They want to go back and look at the record to see if there is one. But there's not one right now that is procedurally barred that they need to allow Martinez or Trevino in order to get to. I'm not sure when you say a claim. The purpose of this motion is to have independent counsel, independent counsel on the Juniper and David, excuse me, and Gray's premise on a conflict which doesn't exist. That's the purpose of Juniper. Even, and I wanted to get back to Trevino, there were other things that Texas looked at and that were raised. One being that Texas said that, excuse me, Trevino said that Texas couldn't point to one single case where ineffective assistance of direct appeal counsel was raised for failing to raise ineffective assistance of trial counsel. And in their citation of additional authorities that was filed, there was a blurb about their not being able to point to one of those cases either. And again, this is not something that we've fully briefed, but I can only go on what I know firsthand in my 18 cases. You would have to go through all the physical files to answer this question because not all the cases are through the state post-conviction process. They're not superior court orders in place that haven't made it into the federal courts. It's not easy to search for. But in my own cases that I physically went through, I have one of those cases. And I submit from talking to my office members that they believe there are others out there. I just am not prepared to present the other names. But in North Carolina, with respect to my own caseload, the state versus David Thomas Garner is an example of the very thing that Texas couldn't prove and that Trevino's court looked at to say that... I'm really kind of confused about why you're so determined to convince us, at least here, that North Carolina is not Texas. Can I ask you this? If this issue had arisen in the district court, before the district court ruled on the petition, let's assume Martinez and Trevino had been decided six months earlier, would you actually be opposing appointment of counsel in the district court? What we're opposing is... No, I'm asking a hypothetical. Would you actually oppose in the district court, and are you opposing in any other cases that are still in the district court, the district court's appointment at federal expense of independent counsel to see if there are any forfeited claims? There are already counsel appointed, especially in this case that are independent and qualified for the purpose of going back... You're not answering my question. They're already appointed. I don't know of a reason to reappoint someone to do something they're already appointed to do. Okay, I'm asking then about a separate case, not this case. Have you opposed the appointment of Trevino counsel in any other case in the district court? Has any of your colleagues opposed it? I'm not aware that it's come up in any other case. It hasn't come up in any other case? No, your honor. But in this case, there's not a conflict, so they're already appointed to go back to the record about what happened at trial and look for issues regarding ineffectiveness of counsel. Now, if we disagree with you on that and find that there is a sufficient showing of a conflict, and as counsel for Mr. Fowler conceded in his argument, we could rule in your favor on the COA issue, on the due process issue, and we could at the same time send it back to the district court for the district court, one, to determine whether to appoint Juniper counsel, and two, if so, under what circumstances, what parameters? Would you oppose that? In this particular case, Trevino and Martinez are about the facts. In this particular case, the issue is totally different because he's already raised ineffective assistance of counsel with respect to this eyewitness issue with Mr. Guzman. Not with respect to what Mr. Guzman was, at least as I understand it, there's been no claim that what appears on the face of it to be at least improper, if not unethical behavior by the police to tell an eyewitness witness, a potential eyewitness witness in a capital case, about how the defendant is seated between his counsel and was bragging about the murder. I don't think you'll find that kind of advice given in any police or detective manual anywhere in this country. You don't do that. And no prosecutor wants a law enforcement officer behaving in that way. So counsel is now claiming that post-conviction counsel in the MAR failed to investigate why trial counsel failed to pursue those avenues of investigation. And what he's asking for in response to my question was an opportunity to go back to the district court and have a lawyer appointed to see if there is a cognizable forfeited claim in those regards. And he agrees that it's separate from the due process claim that we're actually here on. The due process claim that we're actually here on, though, does speak to the issue of whether or not the prosecuting attorneys told Mr. Guzman where the defendant would be in the courtroom. And the North Carolina Supreme Court already adjudicated that issue. What about the officers telling him he's bragging about having killed somebody? That would be news to me. I can't respond to that. I don't know anything about that. I have no idea whether or not there's any truth to that. That's why he wants Trevino counsel appointed. That goes back to raising a substantial claim which Juniper does not speak to, which Trevino does not speak to, but Martinez speaks to whether or not there's raised a substantial claim. And merely bringing up something at this 11th hour doesn't mean a substantial claim. I thought you told me you would oppose it even had it been raised in the district court. In Martinez, it says statement. I'm sorry, didn't you say, did I misunderstand? If this very issue had arisen in the district court before the district court lost jurisdiction over this case, if I understood you, you were saying that the state would oppose even in the district court the appointment of Trevino counsel. So it doesn't have anything to do with the 11th hour, really. Well, actually, the North Carolina Supreme Court held both that the state's procedures weren't unnecessarily suggested and, in the alternative, if they were, that it didn't give rise to a substantial likelihood of irreparable misidentification. Correct. So that's a state, that's a finding. That harmlessness finding has never been challenged as far as best I can tell. That's correct. I don't know why you're going back to a statute to answer a question about the facts here. There is a North Carolina Supreme Court finding in your favor that does not appear to have been challenged. Correct. And the standard under the underlying claim, the one with the certificate of appealability, and I apologize, it's hard to go back and forth, is whether or not those adjudications in the Supreme Court ruling were contrary to or an unreasonable application. Yes. And we don't believe that that was the case, namely because... But my question is, procedurally, how does it get to us if it's never been challenged below? It has to be, in order to challenge it, you have to raise a substantial claim. That is to say a claim that has some merit. And under Martinez, we are allowed to respond that it's not, that it is an insubstantial claim, that it does not have any merit, that it's wholly without support. And all of the issues about, Mr. Guzman was crossing... You do realize that the state's answer to my question is, no, they absolutely can't? The answer is not, no, they absolutely cannot, with some other set of facts. But what I'm saying is... But I gave you the facts. I gave you the facts here. And all I'm saying is, what I'm basically saying is, why isn't this claim, at least with respect to the eyewitness testimony, gone regardless? You're asking me about the underlying claim with respect to the certificate of availability being issued? Maybe I'm not clear on what you're asking. No. The eyewitness testimony... I'm sorry, I don't know how else to say it. There is a finding of fact by the North Carolina Supreme Court that has never been challenged. Why is that before us? How could Fowler preserve it for our consideration? He raised the issue, which this court ran a certificate of availability on... Due process. On due process, yes. Whether or not the eyewitness identification was unreasonably, impermissibly, excuse me, suggestive, and therefore unreliable. That is to say, there is a substantial likelihood of misidentification. Which this court issued a certificate of availability on, and we believe there's no merit to that claim. Now, the only thing that's been brought up today that's different from anything that's already been heard by both the Supreme Court and then the Superior Court... Can a state find that a due process error is harmless? Yes, that's what I was getting at earlier. But in their findings, which this court must, under the gift of deference to, which is a substantially higher degree of deference, I might add, U.S. v. Non-American v. United States Supreme Court, ruled that to decide the issue of whether or not... To decide the issue, you always look back to the last explained state court judgment, that being the Supreme Court decision. And then Brett v. Abramson, which is a U.S. Supreme Court case, then held that the standard for determining whether or not a conviction must be set aside because of federal constitutional error is whether there was harmless error beyond a reasonable doubt. And in giving deference to the state adjudication that it was harmless beyond a reasonable doubt, this court under Brett v. Abramson is allowed to make that same finding, based on giving deference to the state court adjudication. Do I correctly understand that the finding that Judge Duncan and you have been discussing regarding the suggestiveness and the harmfulness of the procedures, am I correct to understand that the Supreme Court of North Carolina never had before it the information regarding the statements by the officers after the second photo arrest? I'm not sure what statements you're talking about. I'm talking about the statement the counsel mentioned that he says only came to light in the Maher proceeding after the direct appeal. The finding that Judge Duncan drew your attention to, am I correct, was a finding made on direct appeal, correct? Or am I incorrect? I don't believe that the argument that counsel just made about telling Mr. Guzman about how much money he got, I'm not sure exactly, I don't recall that. No, I think his question is, the North Carolina Supreme Court's finding that there was no error and if there was error, it was harmless. I think the question is, was it made by the Supreme Court at the conclusion of direct appeal or at the conclusion of the MAR process? Is that the question? Yes, thank you. Was that, by his own argument, that little piece of information? No, the question isn't the information, the question is the North Carolina Supreme Court finding. At what point in the procedural posture did the North Carolina Supreme Court make that finding? They made the finding after the direct appeal process ended, which, of course, was after the trial procedure, which, of course, was after the pretrial suppression hearing. On direct appeal. On direct appeal. On direct appeal, not... Okay. But I only have a minute left. I would just say that whether or not there is an unreasonable application and whether or not, if there is an unreasonable, excuse me, whether or not there's impermissible suggestibility and if there is impermissible suggestibility, because you don't get to the second prong if there's not impermissible suggestibility. Suggestibility in and of itself is not the issue. It has to be impermissible. There's no litmus test for that. You have to look to the facts and circumstances of each case. And even where there is something that's suggestible, again, that's not enough. And based on the facts and circumstances of each case in reaching that determination, the North Carolina Supreme Court, in reaching its final decision, said that this was not the only evidence against this defendant and his guilt. His guilt was based upon lots of different information, namely other witnesses, other witnesses who corroborated not just what Mr. Guzman said, but also what the hard facts, excuse me, such as the caliber of the murder weapon and what Mr. Chavarrot, the other witness, who was not available at the time of the hearing, to testify to what he also said. All those things put in perspective. There was more than just this witness's information and what he testified to that showed that there was no impermissible, which is higher than just permissible, than just suggestibility, but impermissible suggestibility. And the Supreme Court, excuse me, the U.S. Supreme Court has already said that any level of error left at that point, barring impermissible suggestibility, is covered by cross-examination. This witness was cross-examined numerous times, during the pretrial and on trial. And each time he was cross-examined, the jury, excuse me, during the trial, not the pretrial, was there to hear everything that he said. He was not presented as a witness that didn't have anything else, excuse me, what's the word they use? He was not presented as an unbiased witness. He testified that he focused his attention for at least five seconds. And that was his testimony at least. The court found that it was approximately five seconds, but at least meaning it could have been more than that. That he stared at him from 25 feet away. From that wall to the end of that table is about three car widths apart, each car being approximately 10 feet, which means you're looking at less than that distance that he was standing from when he peered through the window and had what I would contend under bigger is a good look at this defendant. That if there were any inaccuracies, that that was for the jury to determine and whittle out. In fact, the United States Supreme Court has ruled that the jury is in the best place to weigh these kinds of issues, that they have the good judgment of American juries for evidence of some untrustworthiness is customary for the grill of the juries. The juries are not so susceptible that they cannot measure intelligently and weigh identification testimony that has some questionable feature. Excuse me, I'm looking at the North Carolina Supreme Court's, I think it's a decision on direct,  that his meeting with prosecutors did not affect his in-court identification. The evidence in the record supports the trial court's conclusion that Guzman's identification was not a result of prosecutorial suggestion. And then it goes on to reject the defendant's argument that the cumulative effect of viewing the photographic arrays and meeting with prosecutors caused Guzman's in-court identification to be a violation. And then assuming, arguendo, that the process was impermissibly suggested, nevertheless concludes under the second prong that the procedures didn't create a substantial likelihood of misidentification, noting that, going on to note that Guzman's in-court identification was by no means the only evidence pointing to the defendant's guilt. It's a pretty global sort of finding. Well, and that's exactly the kind of thing that Biggers, which is the clearly established United States Supreme Court law on the issue, speaks to. Biggers makes clear that it's about the facts and circumstances of the individual cases. Biggers makes clear that it's about the totality of the circumstances. Biggers makes clear that they gave guidelines, which means this is not hard and fast. It's not all of them, but they gave guidelines. And each one of those guidelines that they gave are things that this witness was able to address clearly to the point that the North Carolina Supreme Court did not find that any suggestibility was impermissible and that he, in fact, was able to identify, as he testified as well, that this particular defendant was the person he saw based on his recollection, not based on anything they said. Can you answer my question? Thank you very much. I think we understand your position. Let's hear from Mr. Biggers. Thank you. Thank you. I have like four broad points that I think that I would like to make in rebuttal. The first, just to clarify, what was being discussed at the end there, it is a new fact, the fact that Guzman said that police told him that Fowler had boasted about committing the crime. It is not something that came out until the MAR evidentiary hearing, so that state Supreme Court disposition did not have the benefit of that fact, which is why we see it as an important part of the Martinez plan. That fact is never, because also of state post-conviction counsel's error, that fact is never brought into any sort of I.T. claim on trial counsel's performance in failing to uncover that fact. So on page 1663 of the J.A., Fowler, or Guzman, clearly testified that the police, after that second photo array, that the police told him that Fowler boasted about committing the crime. I think the second point that I would like to address is the issue with the multiple counsel that Fowler had during state post-conviction proceedings. I just want to reemphasize there that what Martinez is getting at, the fact that you only have that one chance in court to present that trial I.T. claim in state post-conviction. I think there's not really any discussion of the number of attorneys that you've had. Just a quote here directly from Martinez. The court says that, whereas here the initial collateral review proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as the effectiveness claim. This is because the state habeas court looks to the merits of the claim of ineffective assistance and no other court has addressed it. So what the clear focus of Martinez is not the number of attorneys or whether different attorneys came in during the same proceeding. It's the number of proceedings. When a state only provides a petitioner one chance to present a trial I.T. claim in state court, Martinez applies regardless of the number of counsel that may have looked at the claim. In my third point, I just want to address the 1418 proceedings, the MAR and the appellate division that was addressed in the letter that was filed I believe on Monday. I have two points to make with respect to that. I think they're covered pretty closely in the letter that I filed. The first is that this is a proceeding that is very much like this abatement remand proceeding in Texas. It's not a proceeding that's typically used to expand the record. I think for all of the same reasons that Judge Davis talked about, there's no right to discovery in these proceedings. You have to present the claim before it even gets remanded for further evidentiary development. You have to know what the claim is. It's not a commonly used proceeding. In the state Supreme Court, in state v. Hearst, which is one of the very first cases to even consider these claims, said basically they prefer to hear for the claim to be presented in state post-conviction proceedings. I think if the state Supreme Court saw this 1418 proceeding as some way to expand the direct appeal record, they would have discussed it in state v. Fair or these number of other cases that discuss the proper proceeding to raise a trial IAC claim. As all of these cases say, with the exception of these very narrow cold record claims that aren't really envisioned by Martinez, the proper proceeding to raise a claim is in state post-conviction proceedings. Moreover, the 1418 proceeding is really not expanding the direct appeal at all. It's just allowing the petitioner to raise his MAR, which in North Carolina is the state post-conviction proceeding at an earlier time. It still implicates those same issues as discussed in Martinez where a petitioner only has that one opportunity to raise that claim. In the rare case that a petitioner chooses to raise that 1418 claim, and certainly on trial IAC claims it is very rare, they are barred from raising that claim again. So there is no second chance. It implicates the exact same MAR just happened slightly earlier in the proceeding. The fourth and final point that I would like to address relates to the conflict. I think it's true when we first began this proceeding we weren't entirely sure what the scope of our conflict might be in this case. I think on our first glance it looked like we were different from Martinez, I'm sorry, different from Juniper and Ryan because we're not precisely the same attorneys. But as we looked at the issue more closely we saw more and more problems which is why as it moved on we indicated that notice of a possible conflict. And when you say, when you use the term conflict you're specifically referring to putting an attorney in the position of having to explore allegations of his or her own ineffectiveness, is that what you mean? Exactly. Because of these two issues first that we may have imputed ineffectiveness because of Ms. Peachout's work on the case for us to then, she was an employee of the Center for Death Penalty Litigation at that time, for us to then go back and attack our own firm's ineffectiveness could be very problematic. And moreover, even after she was offered the case and Ms. Bishopmanac and Ms. Pendry were on the case, CDPL did consult on the case and advised Mr. Fowler's post-conviction attorneys in meetings on how to proceed on the case and that presents another possibility. And if you add that to the fact that Ms. Kenney's representation overlapped with one of the state post-conviction attorneys, I think that creates a real problem. I think the bottom line is this is something that needs to be remanded to the district court for that issue to be looked at further and then for counsel to present a substantial claim if indeed one exists. Of course, what I presented here today is just what I've seen from reviewing the record. There may be evidence of other claims and there may be further evidence to go to this claim related to these other definitions that I've talked about. That's all I have. Thank you. Thank you. I note that your court appointed. We appreciate very much your undertaking representation of the client. Thank you. For the benefit of the people who are here watching, it's a tradition of this court that upon the conclusion of an oral argument, we come down and get a chance to say hello to the lawyers because we frankly live such a monastic existence usually. We welcome the opportunity to speak to our colleagues. We'll come down and greet counsel and then take a brief recess.
judges: William B. Traxler, Jr., Allyson K. Duncan, Andre M. Davis